EMSWILER, ESTATE OF, In Re

Probate Court, Franklin Co

No 56382

John H. Eagleson, Columbus, for executors.

John H Summers, Columbus, and Frank B. McClelland, Columbus, for exceptor.

## OPINION

By McCLELLAND, J.

This matter comes before the Court on the exceptions filed by the successor trustee and the guardian ad litem of the minor beneficiaries to the report of the Master to whom exceptions to the accounts heretofore filed had been referred.

We have considered the report of the Master and his findings of fact and conclusions of law. We have also examined the exceptions, together with the briefs filed in support of the exceptions and those filed in opposition to same, and we find the case is not without its difficulties.

Upon an examination of the will of Mr. Emswiler we find that he directs first, the payment of his debts, and then the payment of five specific legacies of $1000.00 each. He then uses the following language in Item 7 of the will:

"All the rest, residue and remainder of my estate, both real and personal of every description, of whatsoever nature and wheresoever situated, now owned or hereafter acquired by me, or of which I may have the control or disposition, I desire to be divided among my wife and children.

Unto my said wife, Annabell Emswiler, if she survive me, I give, devise and bequeath the undivided one-fifth part thereof. To have and to hold, to receive, use and enjoy the income, rents and profits thereof for and during the term of her natural life. * * *

All the rest, residue and remainder of my estate I give, devise and bequeath unto my said wife and Charles E. Nixon of Columbus, Ohio, and their successors, IN TRUST, nevertheless, for the following purposes."

The next succeeding paragraphs define the duties of the trustees.

Item 10 of the will contains the following language:

"I nominate, constitute and appoint my wife Annabell Emswiler to be the executrix and Charles E. Nixon the executor of this my last will and testament.

I hereby authorize and empower my said executrix and executor to compromise, adjust, release and discharge all debts and claims due to or from me in such manner as to them may seem advisable. I also authorize and empower them, for the purpose of paying debts, to sell any or all my real or personal property in such manner and upon such terms as they may deem proper and without the intervention of any court or courts, and to execute, acknowledge and deliver proper deeds or other instruments therefor to the purchasers thereof, who shall not be required to see to the application of the purchase money.

I further direct that any inheritance, estate or transfer tax which may be levied or charged upon any interest herein bequeathed and devised be treated as a debt of my estate and be paid out of my estate."

We have incorporated the foregoing quotations from the will of Mr. Emswiler for the purpose of showing that Mr. Emswiler gave the two individuals certain duties and powers as trustees and that the powers and duties which he gave to his executors were those limited to the necessary duties in paying his debts and performing other duties which are mandatory upon the executors by the terms of the statute.

The executors qualified as such shortly after the death of Mr. Emswiler in 1928, and gave bond as such.

It will be unnecessary to recite herein the history of the actions of the executors in handling the estate because that is set forth specifically in the finding of the Master, but it may be advisable to recite that the executors continued to administer the estate until January 29, 1935. After the court had cited them for same they filed their first account covering a period from May 19, 1928 to December 31, 1933. This account was later followed by an amended account filed on January 7, 1937, and covered the same period. On March 4, 1935, the executors filed their second and final account covering the period from January 1, 1934, to February 28, 1935, and which was later superseded by another account filed on January 7th, 1937, and designated the executors second and final amended and corrected account. On March 7, 1935, the persons designated as executors qualified as trustees and Letters of Trusteeship were issued on that date. Subsequent thereto the trustees resigned and the Court appointed John H. Summers as trustee, on February 24, 1937.

The transactions complained of were transactions occurring prior to the date of the qualification as trustees. During the time between their qualification as executors and the date of qualification as trustees the estate depreciated somewhat more than fifty per cent of its original value. It is the contention of the exceptor, the successor trustee, that the depreciation in value of the estate was due to the unlawful acts of the fiduciaries, who, it is contended, were acting purely as executors and not as trustees. It is the contention of the former executors that they were acting as trustees as well as executors during the entire time. A correct determination of the issues in this matter will depend almost entirely upon our determination as to whether the fiduciaries were acting in the capacity of executors or as trustees, or in both capacities, during the time above mentioned.

Counsel for both parties have called our attention to one case upon which both rely and that is the case of Gandolfo v Walker et, 15 Oh St at page 273. Before discussing that case we wish to quote from Rockel's Probate Practice Edition, at §1251, in which the following language is used:

"Where the will creates a trust and directs that some person other than the executor shall execute the trust, little difficulty is experienced by separating the duty of each. But where the same person is mentioned as both executor and trustee under a will, it is a matter of extreme difficulty very often, to determine when a certain act is done as executor or as trustee. Generally speaking, it is the duty of an executor to pay the debts of the decedent and distribute the estate. It is not the province of an executor to hold and manage the estate. This ordinarily would be the duty of a trustee. Where such duties are placed by will upon one person, he may accept the one and decline the other, but if he accept the execution of the trust by qualifying as executor, he will be deemed to accept the trust, and he might be held to account in each capacity. In such cases it is not required that he take an additional oath of office, nor is it necessary that letters testamentary directed to him should designate his function as trustee from that as executor. Wherever the trust is separate and distinct, for instance, if the will provided that the executor should collect the assets and distribute all the funds except a certain portion, which he was to hold for one person for a number of years, and then pay the remainder over to the heirs of such person, in such a case, the executor should unquestionably settle his accounts as executor and make application and give a new bond and be appointed as a trustee. This would save all trouble as to liabilities of sureties in reference to the fund for which they might be held responsible. In some states the sureties on an ex-

ecutor's bond will not be held liable for his acts as trustee. But the rule is otherwise in other states. * * *

The Courts in Ohio would probably follow the decision of the Massachusetts Courts, as much of our probate law is taken from the laws of that state. Where the same person is appointed trustee and executor under a will, he holds the property as executor until he has settled his account in the Probate Court as executor, crediting himself with the funds he holds as trustee, or has done some other notorious act of transfer."

At this point the author refers to the case of Gandolfo v Walker et, above noted. It also refers to In re: Higgins Estate, 15 Montana, page 474. It also makes a comment on Sheffield v Parker, 158 Mass. page 330, as follows:

"When a trust fund is to be created by an executor out of the assets of an estate, something more must be done by the executor, in order to impress the trust on particular property, than to hold the property with the intention that it shall constitute the trust fund. There must be some act of appropriation which transfers it to the trust fund and gives the beneficiaries right to have it held for them."

The author of the treatise above named also calls our attention to In re: Crawford, 21 C. C. 554.

The statement is so clear that we feel impelled to quote therefrom.

"The general rule that where there is a devise or bequest to an executor in trust, the executor receives the property or fund at once and the same never becomes assets, must be subject to the qualifications. that if needed assets, the title of the executor is superior to that of trustee, so that the former may take, use and account for the same as assets: and also that if the property is not reduced to the form or condition in which it is to be distributed as trust property, the duty of thus transforming it may devolve upon and be ex-

ercised by the executor as such, and that this will be the case unless the will distinctly provides that this duty shall devolve upon the trustee as such. In such cases, the same person being both executor and trustee, he will not take in the latter capacity, until he has fully discharged his duties in the former capacity, and not until the fund or property has been distinctly set apart as trust property. The title to money and personal property devised by will does not devolve upon the legatees until the probate of the will and administration of the estate. Under a will devising certain sums of money to executors in trust for certain purposes, and devising to such executors all real and personal property, in trust for the execution of the will with full power to sell or mortgage and convey any property, without being required to obtain orders of the court therefor, the executors will take as executors, and their relations to the estate as trustees cannot arise until the estate has been reduced to money and nothing remains but to distribute or invest the funds as provided by the will."

We find that this case has been approved by the Supreme Court in 68 Oh St, at page 58.

We will now go to the 15 Oh St, at page 251, to which reference has been made. This case is somewhat confusing and as a result thereof both parties are relying upon same as an authority. There are two significant paragraphs in the decision of Judge Welch, found at page 274, which paragraph is as follows:

"I admit that a testator may direct the continuance of a trade or business by his executor, as trustee independent of his executorship; and such cases often occur. But they are always either where there is a devise or bequest to the executor in trust, or where part of the assets are specifically set apart. and directed to be invested as a trust fund. In the former case the executor receives them at once as trustee. and they never become assets. In the.

latter, they are received by him as executor, and remain assets of the estate till so set apart and invested. But the setting apart must be distinct, complete and final. It must separate the fund from the assets of the estate, and from the control of the executor as such, as perfectly as the payment of a legacy separates it from the estate and casts the burden of managing and controlling it upon the legatee in trust. And where the executor is to be held as acting in both capacities, it must plainly appear that such was the intention of the testator. The executorship itself is a trust, and every provision in the will regarding the management of the assets, before they pass out of the executor's hands into those of the beneficiaries, will prima facie be held as coming within that trust; and the contrary intention must be made plainly to appear. As a general rule, the duties of the executor, as such, are co-extensive with the provisions of the will; and it is only in cases of unmistakable intention, or of inherent necessity, that a separate character will be assigned to him."

Now upon an examination of the will we find that the testator explicitly provided that his debts and five specific legacies should be paid, and after the payment of his debts and legacies the remainder then was to be divided among his wife and children, and the children's share was to go to the trustees. It therefore is apparent that under the Ohio rule the entire personal estate passed to the executors as assets of the estate to be used as far as necessary in paying the debts and the legacies. The rest and residue then was to be divided among the wife and the trustees for the benefit of the children. The executors could not determine what the rest and residue would be until the debts and legacies were paid.

. Upon an examination of the record in this case we find that the fiduciaries during all this time until 1935 held themselves out as executors. We also find that there is no evidence whatsoever that there was any overt act on

their part to put the remainder in the form of a trust, nor was it ever set up on their books in the form of a trust. It was always carried in the name and in the form as an executor's account until they were required by the Probate Court to qualify as trustees.

We are not unconscious of the fact that the law in effect at the time the executors qualified did not require the trustees to qualify in the Probate Court as such. This was not required until the amendment of 1932 became effective. But it did not excuse the executors from taking such particular overt action in setting aside and treating the residue as trust property. We, of course, realize that a qualification in the Probate Court by trustees does not of itself make them trustees. A person becomes a fiduciary, whether executor or trustee, by the terms of the instrument creating the trust and by the fiduciary accepting the same.

The fiduciaries in the present case accepted the trust as executors and treated themselves as executors until they qualified in the Probate Court some seven years later. During all this time the estate was handled by them it is our opinion that under the Ohio rule we are compelled to hold that they were executors, and as such executors they were limited by the statute and by the specific authority given by the will. This specific authority is given by Item 10 thereof, which has been quoted hereinbefore. Their duties as trustees are specifically defined by Item 7 of the will, a portion of which we have hereinbefore quoted.

We have been reluctant to come to this conclusion, for it, no doubt, will work a hardship upon the former trustees, but under the Ohio rule we are compelled to reach that conclusion.

Had the executors completed their administration at the end of one year as required by the statute at that time, and then had qualified in the Probate Court as trustees, their conduct then would have been measured by the provisions of Item 7 of the will. But even in that case we are not sure that we would have found the administration

without fault. Inasmuch as we have come to the conclusion as hereinbefore stated, their conduct will have to be measured by the law governing the conduct and duty of executors and the further powers given to the executors by the terms of the will, and in doing so we therefore are compelled to find that their acts complained of were without lawful justification. It therefore follows that the exceptions to the Master Commissioner's report will be sustained.